IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRUTEMP REFRIGERATION       )
COMMERCIAL CLIMATE, LLC,      )
                                    )
      Plaintiff,                )
                                    )   CASE NO.  1:23-cv-667-ECM
v.                                     )            [WO]
                                    )
DANIELLE MOWBRAY, *et al.*,     )
                                    )
      Defendants.         )
                                    )

## <u>MEMORANDUM OPINION and ORDER</u>

## I.  INTRODUCTION

This matter is before the Court on Plaintiff TruTemp Refrigeration & Commercial

Climate, LLC's ("Plaintiff" or "TruTemp"), motion for a temporary restraining order and

a preliminary injunction, (doc. 2), wherein TruTemp seeks to: (1) enjoin Defendants

Danielle Mowbray ("Mowbray") and Amy Suzanne Hadden, also known as Amy

Richardson ("Richardson"), (collectively "the Defendants") from further use or disclosure

of TruTemp's trade secrets and confidential information; (2) require the Defendants to

immediately cease use of all computers and/or electronic devices or accounts containing

TruTemp's information unlawfully taken from TruTemp; (3) require the Defendants to

return all of TruTemp's trade secrets and confidential information; (4) destroy any and all

copies of such trade secrets and confidential information; (5) return TruTemp's stolen

desktop computer and files unlawfully taken from TruTemp; (6) provide any and all login

credentials that were previously used by Defendants for all computers and accounts for the

benefit of TruTemp, including but not limited to its physical computers and server, WinTac, Gmail, QuickBooks, and any other services or accounts; (7) provide an accounting of any and all credit accounts opened or used by the Defendants utilizing TruTemp's Employer Identification Number, Alabama License Number, or its United States Environmental Protection Agency License Number, and to cease utilizing any such account; (8) use good faith to cooperate in allowing TruTemp to regain access to its computer systems and online accounts; (9) provide a complete listing of any and all persons or entities to whom the Defendants disclosed TruTemp's trade secrets and/or confidential information, and (10) order the Defendants to preserve all evidence not otherwise returned to TruTemp and deleted.

TruTemp filed this lawsuit on November 16, 2023. (Doc. 1).  In its Verified Complaint, TruTemp alleges that Mowbray and Richardson misappropriated trade secrets and confidential information, including taking confidential files and passwords, for use in a competing business.  Specifically, TruTemp alleges that the Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C § 1030 ("CFAA") (Counts One, Two, and Three), the Defend Trade Secrets Act, 18 U.S.C § 1836 ("DTSA") (Counts Four and Five), the Alabama Trade Secrets Act, ALA. CODE § 8-27-1 ("ATSA") (Counts Six and Seven), as well as a claim of breach of fiduciary duty against Mowbray (Count Eight), and claims of faithless servant (Count Nine), conversion (Count Ten), and unjust enrichment (Count Eleven) against both Defendants.

For the reasons explained below, the Court concludes that TruTemp has demonstrated, at this stage, a likelihood of success on the merits of its misappropriation of trade secrets claims, a likelihood of irreparable injury in the absence of a restraining order issued before the Defendants can be heard in opposition, and that the equities weigh in its favor.  Accordingly, TruTemp's motion for a temporary restraining order (doc. 2) is due to be GRANTED to the extent that a temporary restraining order shall issue as set out further below.  Additionally, the Court will set an evidentiary hearing on TruTemp's motion for a preliminary injunction by separate order.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  Based on the allegations of the Verified Complaint, the Court concludes that it can properly exercise personal jurisdiction over the Defendants and that venue properly lies in the Middle District of Alabama, *see* 28 U.S.C. § 1391.

## III.  FACTS

"When ruling on a [temporary restraining order], 'all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a [temporary restraining order] are taken as true.'" *Alabama v. U.S. Dep't of Com.*, 2021 WL 2668810, at *1 (M.D. Ala. June 29, 2021) (second alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).

TruTemp provides refrigeration and heating, ventilation, and air conditioning ("HVAC") services to customers throughout southeast Alabama. (Doc. 1 at 4). According to the Verified Complaint, Jerome Hughes ("Hughes") founded TruTemp in 2022 as the sole member and owner. (*Id.*). The refrigeration and HVAC business is highly regulated with proper licensing required to even purchase certain materials necessary for carrying out such work. (*Id.*).

The focus of TruTemp's business is on commercial and industrial accounts, which "require significant time and investment to build the qualifications and goodwill necessary to obtain this steady, recurring business." (*Id.*). "To provide this high level of services, TruTemp depends on various technology platforms to manage its business. These platforms include WinTac, for service requests and quote generation, and Quickbooks, for accounts receivable and payable and general financial tracking." (*Id.* at 5).

Building TruTemp's business also necessitated assembling a staff. To this end, after previously working with Mowbray for multiple years at a prior employer in the same field, Hughes hired Mowbray at TruTemp to serve as its office administrator. (*Id.* at 5–6, paras. 16, 18). The Verified Complaint states it was "[i]n this position, [that] Mowbray had access to TruTemp's commercially sensitive information, including vendor and customer contacts, contracts, service records, company cloud-based software programs, employee files, financial information, bank accounts, and other commercially sensitive information and documents." (*Id.* at 5). Hughes had trust and confidence in Mowbray to perform her role at TruTemp. (*Id.* at 6). In fact, Mowbray was provided a key to the office with only

4

herself and Hughes authorized to access TruTemp's office. (*Id.* at 6).  Further, Mowbray had remote access to cameras which were installed on the front and rear doors of TruTemp's office. (*Id.* at 6).

The office staff expanded in August or September 2023 when Mowbray hired Richardson as an office assistant.[1] (*Id.* at 7).  Unbeknownst to Hughes, Mowbray gave Richardson an office key, which she was not authorized to do. (*See id.* at 6, para. 20; *id.* at 9, para. 33).  Due to Hughes supervising fieldwork at night, he never met with Richardson in person while she was employed at TruTemp; however, Hughes and Richardson were previously coworkers, and Hughes trusted Richardson. (*Id.* at 7).   Mowbray and Richardson were the only office staff. (*Id.* at 7).

On September 13, 2023, Mowbray resigned with immediate effect and provided no explanation for doing so. (*Id.* at 7, para. 26).  The next day, on September 14, 2023, Hughes came to secure TruTemp's office due to Mowbray's resignation—Mowbray and Richardson arrived shortly thereafter. (*Id.* at 7–8, paras. 27–30).  Mowbray's stated reason for visiting the office was to "complete payroll" and, over the objections of Hughes, entered her former office with Richardson to purportedly do so. (*Id.* at 8).  After emerging from Mowbray's office, Mowbray and Richardson each tendered a set of office keys to Hughes—this was the first time Hughes learned of Richardson's unauthorized access to TruTemp's office. (*Id.* at 9).

---

[1] Due to missing employment records, as will be explained later, TruTemp is unable to determine Richardson's exact start date. (*See id.* at 7, n. 1; *id.* at 9).

Following the departure of Mowbray and Richardson, Hughes discovered that company property was missing—including a desktop computer, customer and job files, employee files, and sensitive information pertaining to TruTemp's business. (*Id.* at 9, para. 34). Of particular concern, the missing desktop computer contained extensive customer information, sales information, business development strategies, financial records, and other confidential business information. (*Id.* at 10, para. 38). Additionally, Hughes found discarded company records and files in TruTemp's dumpster. These files should have been retained and no one other than Mowbray and Richardson would have had access to them. (*Id.* at 9). To date, many records and files remain missing, including Richardson's complete employment file and portions of Mowbray's employment file. (*Id.* at 9).

The Defendants also changed TruTemp's login credentials to its other computers and accounts, rendering the business unable to access technology upon which it depends to operate. (*Id.* at 10–12, paras. 30–40). For example, TruTemp now cannot access its QuickBooks accounts, preventing it from processing accounts payable and receivable, and hindering its ability to further investigate other financial wrongdoing. (*Id.* at 11). Mowbray was the only person besides Hughes authorized to access TruTemp's QuickBooks accounts. (*Id.* at 11, para. 46). Moreover, Mowbray linked TruTemp's accounts to her personal phone. (*Id.* at 11).

Upon review of the few documents available to it, TruTemp discovered that the Defendants diverted multiple TruTemp work orders to other unknown providers. (*Id.* at 12). Further, Hughes learned from TruTemp's insurance agent that TruTemp's insurance

was used for multiple projects without any record of the work being performed by TruTemp or TruTemp receiving any profits from those jobs. (*Id.* at 12–13, para. 55). Similarly, it is believed that the Defendants are utilizing TruTemp's Employee Identification Number, Alabama HVAC Contractors License Number, its United States Environmental Protection Agency License Number, and its credit accounts without authorization. Mowbray is the only one besides Hughes who had access to this information. (*Id.* at 13, para. 58).

Though unable to determine the exact dollar amount, TruTemp also uncovered Mowbray's unauthorized diversion of company funds for her own benefit, including payments to herself and improper payment of health benefits for her and her husband. (*Id.* at 13, paras. 56–57).

On September 25, 2023, Mowbray organized OM Groups LLC in the State of Alabama. It is believed that the Defendants intend to use this new entity to steal TruTemp's customers and drive it out of business. (*Id.* at 14, para. 61).

## IV. DISCUSSION

Federal Rule of Civil Procedure 65 provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The Court may grant a temporary restraining order if TruTemp demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the restraining order; (3) that the threatened injury to it outweighs the harm the restraining order would cause the other litigants; and (4) that the restraining order would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005) (per curiam). A temporary restraining order is an "extraordinary remedy" to which the Court should "pay particular regard for the public consequences" of granting. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008).

### A. Substantial Likelihood of Success on the Merits

In its motion, TruTemp argues that it has a substantial likelihood of success on the merits of its CFAA claims and misappropriation of trade secrets claims against both Defendants. The Court begins with misappropriation of trade secrets.

The DTSA creates a private cause of action for an "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines trade secrets as tangible and intangible "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices,

formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," if the owner "has taken reasonable measures to keep such information secret" and the information "derives independent economic value . . . from not being generally known." *Id.* § 1839(3). Prohibited "misappropriation" includes both "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret" without the owner's consent. *Id.* § 1839(5)(A)–(B). Similarly, the ATSA imposes civil liability upon a person who "discloses or uses the trade secret of another, without a privilege to do so," if, as relevant here:

> (1) That person discovered the trade secret by improper means;
> (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other;
> (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2) . . .

ALA. CODE § 8-27-3. The ATSA defines a "trade secret" as information that (1) is "used or intended for use in a trade or business"; (2) is "included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process"; (3) is "not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret"; (4) cannot "be readily ascertained or derived from publicly available information"; (5) is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy"; and (6) "[h]as significant economic value." *Id.* § 8-27-2(1).

TruTemp alleges that Mowbray and Richardson took TruTemp's desktop computer, "customer and job files, employee files, and sensitive information related to TruTemp's business." (Doc. 1 at 9).  The computer contained "extensive customer information, sales information, business development strategies, sensitive company information, financial records, and other confidential information related to TruTemp's business." (*Id.* at 10). TruTemp alleges that Mowbray and Richardson have also linked TruTemp's Gmail and QuickBooks accounts to their personal emails, and that they changed the account passwords to prevent TruTemp from accessing its accounts payable and customer work requests. (*Id.* at 11–12).  Further, TruTemp alleges that Mowbray and Richardson are using TruTemp's Employer Identification Number, Alabama HVAC Contractors License Number, its United States Environmental Protection Agency License Number, and credit accounts without authorization. (*Id.* at 13).  Such documents and files likely constitute trade secrets under both the DTSA and the ATSA. *See* 18 U.S.C. § 1839(3) (trade secrets are "financial, business, scientific, technical, economic, or engineering information, including . . . formulas, designs, prototypes, methods, techniques, processes, [and] procedures"); ALA. CODE § 8-27-2(1); *see also, e.g.*, *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d 1028, 1034 (Ala. 2004) (holding that documents "used to forecast sales, to determine what prices should be quoted to certain customers, to create financial statements . . . and to conduct other standard business practices" were trade secrets under the ATSA).

Additionally, TruTemp alleges that it took reasonable steps to keep its information secret, including maintaining the information on a password protected computer system, limiting access to TruTemp employees, restricting access on a "need-to-know" basis, using a secure accounting software, and otherwise not publishing or disclosing the information. (Doc. 1 at 28).  Accepting these allegations as true, TruTemp has likely taken reasonable steps to keep its information secret. *See* 18 U.S.C. § 1839(3); ALA. CODE § 8-27-2(1); *see also Snider Tire, Inc. v. Chapman*, 2021 WL 2497944, at *5 (N.D. Ala. 2021) (finding that an allegation of password protection permitted the inference that the plaintiff took reasonable efforts to maintain a database's secrecy).[2]  The Court also finds that TruTemp has established that the information likely cannot "be readily ascertained or derived from publicly available information" and has "significant economic value" for purposes of the ATSA, *see* ALA. CODE § 8-27-2(1), and that the information "derives independent economic value . . . from not being generally known" for purposes of the DTSA, *see* 18 U.S.C. § 1839(3).

Finally, TruTemp alleges that it held Mowbray in a position of trust and confidence, and that Mowbray had access to confidential information in her position. (Doc. 1 at 6, 14). TruTemp alleges that Mowbray and Richardson used their positions to covertly obtain large amounts of TruTemp's confidential information and link TruTemp's confidential, online accounts to Mowbray's personal phone, and that the Defendants are using that

---

[2] While *Snider* is not binding authority, the Court finds it persuasive.

information to compete with TruTemp through a new business. (*Id.* at 11, 14). Additionally, TruTemp alleges that Mowbray and Richardson undertook efforts to prevent TruTemp from discovering the wrongdoing. (*Id.*)  Based on these allegations, TruTemp has shown at this stage that the Defendants likely acquired TruTemp's trade secrets by improper means. *See* 18 U.S.C. § 1839(5)(A)–(B); Ala. Code § 8-27-3; *cf. Priority Payment Sys., LLC v. Signapay, LTD*, 161 F. Supp. 3d 1294, 1301–02 (N.D. Ga. 2016) (analyzing claim under the Georgia Trade Secrets Act, which is similar to the DTSA and the ATSA, and finding that preliminary injunction was warranted where former employee engaged in misappropriation by sending confidential information to his personal e-mail while communicating and working "in tandem with" a company that wanted access to that information).

Taking as true the Verified Complaint's factual allegations, the Court finds that TruTemp has demonstrated a substantial likelihood of success on the merits of its misappropriation of trade secrets claims under the DTSA and the ATSA.  Because the Court has determined that TruTemp has a substantial likelihood of success on the merits of its misappropriation of trade secrets claims, the Court pretermits any discussion of the substantial likelihood of success on TruTemp's remaining claims. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005) ("To obtain temporary injunctive relief, [a party] must show a substantial likelihood of success on at least one claim."), *aff'd*, 403 F.3d 1223 (11th Cir. 2005); *Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts

multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)).

### B. Irreparable Injury

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). TruTemp argues that it faces a likelihood of irreparable injury absent a temporary restraining order because it is deprived of access to its own software and computer systems due to the Defendants' actions, harming its business and goodwill with customers. Further, TruTemp argues that the utilization of TruTemp's confidential information by the Defendants cannot be adequately remedied by monetary damages. Based on the nonbinding but persuasive authority from other federal courts, including district courts in the Eleventh Circuit, the Court concludes that TruTemp's injury attributable to the Defendants' theft and use of TruTemp's trade secrets cannot be undone through monetary remedies alone and thus constitutes irreparable injury. If the Defendants are not enjoined from using the confidential information they improperly obtained from TruTemp, TruTemp stands to lose its competitive market advantage and customer base. *Cf. N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (analyzing misappropriation of trade secrets claim under New York law and concluding that the plaintiff demonstrated irreparable harm, explaining that the "loss of trade secrets cannot be measured in money damages" because "[a] trade secret once lost is, of course, lost forever" (alteration in original) (citation omitted)); *Priority Payment Sys.*, 161 F. Supp. 3d at 1303

(finding that if the defendants were permitted to complete any work on a system that incorporated the plaintiffs' trade secrets, the plaintiffs' "competitive market advantage and customer base from its advanced software system would be diluted," and damages would be an inadequate remedy); *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012) (analyzing misappropriation of trade secrets claim under the Florida Uniform Trade Secrets Act, which is similar to the DTSA and the ATSA, and concluding that a former employee's possession of "confidential information regarding contract structures, pricing points, marketing strategies, and customer management" posed irreparable harm, including because the plaintiff's "reputation for maintaining its clients' confidentiality would be tarnished" and "competitors could [use that information to] underbid" the plaintiff); *Marine Turbo Eng'g, Ltd. v. Turbocharter Servs. Worldwide, LLC*, 2011 WL 6754058, at *10 (S.D. Fla. Dec. 22, 2011) (finding that the harm caused by trade secret misappropriation "is clearly an injury, which is not easily quantifiable in monetary terms").

Based on the facts alleged in the Verified Complaint and the persuasive authority cited above, the Court concludes that TruTemp has shown it will likely be irreparably injured absent a restraining order. Additionally, the Court concludes that specific facts in TruTemp's Verified Complaint clearly show that irreparable injury will result to TruTemp before the Defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A).

### C.  Balance of Harms

The balance of harms weighs in favor of granting a temporary restraining order.  If a restraining order is not granted, Mowbray and Richardson can continue using TruTemp's trade secrets and confidential information to undercut TruTemp on price, take away TruTemp's customers, and unlawfully use TruTemp's licensing numbers and credit accounts.  Meanwhile, Mowbray and Richardson face little injury: the information at issue here belongs to TruTemp, and so "the harm to [TruTemp] outweighs any threat of potential harm to the Defendant[s] from the injunction." *See Truepenny People LLC v. Cota*, 2016 WL 9308534, at *2 (N.D. Fla. Oct. 18, 2016).

### D.  Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted).  The Court finds that "the public interest is served by protecting trade secrets." *Freedom Med., Inc. v. Maheshwar Sewpersaud*, 469 F. Supp. 3d 1269, 1279 (M.D. Fl. 2020) (citation omitted).  While the public benefits from free competition, "free competition must be founded on *fair* competition." *Fortline, Inc. v. Moody*, 2013 WL 12101142, at *6 (S.D. Fla. Jan. 7, 2013) (emphasis added).  "An order enjoining [the] Defendants from unfairly benefiting from [TruTemp's] trade secrets affirms sound public policy and incentivizes market players to compete fairly." *See id.* (citation omitted).

### E.  Certification of Counsel

TruTemp's counsel has certified in writing that he provided the Defendants notice of TruTemp's motion for a temporary restraining order and a preliminary injunction (doc. 2) by personal service and by sending the motion and the complaint to Mowbray and Richardson via FedEx to Mowbray and Richardson's respective addresses. (Doc. 3).  The Court is satisfied with TruTemp's counsel's efforts to give notice to the Defendants in accordance with Rule 65(b)(1).  Additionally, as explained above, the Court concludes that irreparable injury will result to TruTemp before the Defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A).

### F.  Bond Requirement

Rule 65(c) specifies that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  "[T]he amount of security required . . . is a matter within the discretion of the trial court . . . ." *BellSouth Telecomms. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (citation omitted).  The Court finds here that, given the short duration of the temporary restraining order and the expedited basis on which the Court will hold a hearing on TruTemp's motion for preliminary injunction, a security bond of $1,000 is appropriate.  Thus, the Court will require TruTemp to post a bond of $1,000.  The amount of the bond will be revisited at the time set for the preliminary injunction hearing.

16

### G.  Scope of Restraining Order

Although the Court concludes that a temporary restraining order is warranted, it declines to grant all the relief TruTemp requests.  In particular, the Court declines to order the destruction of any documents or things.  The Court instead is convinced that requiring the Defendants and any of their agents, employees, or attorneys to preserve, sequester, and refrain from accessing any wrongfully obtained information, and to certify to the Court that they have done so, is sufficient to protect all relevant interests at this time.

## V.  CONCLUSION

Because TruTemp has shown, at this stage, a substantial likelihood of success on its misappropriation of trade secrets claims under the DTSA and the ATSA, a likelihood of irreparable injury in the absence of an injunction before the Defendants can be heard in opposition, and that the equities weight in its favor, TruTemp has met its burden of establishing entitlement to a temporary restraining order.

It is therefore ORDERED as follows:

1.     TruTemp's motion for temporary restraining order and for entry of a preliminary injunction (doc. 2) is hereby GRANTED IN PART to the extent it seeks a temporary restraining order.  TruTemp's request for a preliminary injunction remains pending.

2.     The Defendants, their agents, servants, employees, or attorneys, and any other person and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys, are hereby ENJOINED as follows:

a.  from directly or indirectly accessing, using, relying upon, disseminating, or disclosing TruTemp's trade secrets and/or confidential information, which shall include any vendor and customer contacts, contracts, service records, email accounts, financial information, WinTac account, QuickBooks accounts, bank accounts, and other commercially sensitive information and documents wrongfully taken from TruTemp;

b.  from accessing or using any computer, computer system, email account, or internet-based account of TruTemp's, including but not limited to WinTac, Google Mail, or QuickBooks, or any other account belonging to or opened for the benefit of TruTemp;

c.  from soliciting and/or seeking to do business with any of TruTemp's customers, vendors, distributors, employees, service technicians, laborers, or any other person or entity derived from the information listed in (a.) above; however, this prohibition shall not extend to any person or entity otherwise known to the Defendants independent of any information taken from or learned from TruTemp;

d.  from using any credit, vendor, or any other account or thing opened utilizing TruTemp's Employee Identification Number, State of Alabama License Numbers, and/or United States Environmental Protection Agency Number;

3.    The Defendants, their agents, servants, employees, or attorneys, and any other person and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys, are further ORDERED as follows:

    a.  Within **twenty-four (24) hours** of receiving this Order, preserve and return all TruTemp computer(s) and files, including but not limited to the missing desktop computer, any and all information copied from any of TruTemp's physical files, computers, computer system, or electronic, and any other physical or intangible property the Defendants copied or removed from TruTemp, or any other document or thing otherwise belonging to TruTemp or containing TruTemp's confidential business information or trade secrets, by delivering the same to Plaintiff's counsel;

    b.  Within **twenty-four (24) hours** of receiving this Order, produce any and all login credentials, including usernames and passwords, for TruTemp accounts used by the Defendants, or any other person and/or entity in active concert or participation with the Defendants, including but not limited to, TruTemp's missing desktop computer, other computers, computer systems and server, WinTac, Google Mail, QuickBooks, and any other TruTemp accounts, by providing the same to Plaintiff's counsel;

    c.  Within **forty-eight (48) hours** of receiving this Order, each Defendant, their agents, servants, employees, or attorneys, and any other person

and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys, shall each certify to Plaintiff's counsel under penalty of perjury that a diligent search was performed and all property has been returned as required by (a.) above and that all account login credentials have been provided as required by (b.) above.  All certifications shall also be filed with the Court.

d. Within **seventy-two (72) hours** of receiving this Order, provide to Plaintiff's counsel the following:

    i. a complete listing of all persons or entities to whom the Defendants disclosed TruTemp's trade secrets and/or confidential information, the date upon which the disclosure(s) occurred, and a description of the information disclosed;

    ii. a complete listing of all credit, vendor, or other accounts opened without authorization by the Defendants, their agents, servants, employees, or attorneys, and any other person and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys with TruTemp's Employer Identification Number or State of Alabama license numbers;

    iii. a complete listing of any TruTemp document, thing, account, or login credential which the Defendants, their agents, servants,

employees, or attorneys, and any other person and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys deleted, destroyed, changed, or otherwise altered in any way without authorization prior to the receipt of this Order.

e. The Defendants shall use their best reasonable efforts and cooperate in good faith to restore to TruTemp access and control of its computers, computer systems, and online accounts, including but not limited to QuickBooks, Google Mail, WinTac, and coordinate transfer of two-factor authentication for any login requirement.

4.      The Defendants and their agents, servants, employees, or attorneys, and any other person and/or entity in active concert and participation with the Defendants or their agents, servants, employees, or attorneys, are further ORDERED to preserve all evidence which may be or become relevant to facts or issues raised in the Complaint or any defense. This includes any electronic or physical records, text messages, emails, social media messages or posts, or any other communication, document, or thing, or deleted but still accessible copies of the same. The Defendants shall disable any automatic delete or archive function on any electronic device, social media account, or similar.

5.      The Court further finds that a reasonable bond is, and is hereby set at, $1,000. This temporary restraining order shall immediately and forthwith take effect and be

enforceable upon the posting of a bond or sufficient sureties as approved by the Clerk of Court to satisfy the bond amount.

6.     Copies of this Order shall be immediately served upon the Defendants by the Plaintiff and certification made to the Court immediately thereafter that service has been perfected.

7.     A hearing on the Plaintiffs' request for a preliminary injunction will be set by separate order.

DONE this 17th day of November, 2023 at 11:37 a.m. CT.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE